**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RUSSELL ROSE,**                                    **CASE NO. 2:06-cv-663**
                                                     **JUDGE WATSON**
            **Petitioner,**                          **MAGISTRATE JUDGE KING**

**v.**

**TIM BRUNSMAN, Warden,**

            **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition, respondent's return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## I. FACTS AND PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On January 2, 2004, the Guernsey County Grand Jury indicted appellant on one count of felonious assault in violation of R.C. 2903.11, a felony of the second degree. The charge was accompanied by a firearm specification. At his arraignment on January 12, 2004, appellant entered a plea of not guilty.
>
> Thereafter, a jury trial commenced on October 26, 2004. The following testimony was adduced at trial.
>
> On November 20, 2003, as Tim Piccin was driving to work at approximately 5:10 a.m., a pick up truck pulled out in front of him. Rather than running into the back of the truck or slamming on his brakes, Piccin put on his blinker and "led him a few car lengths and I got back into my lane." Transcript at 174. Soon thereafter, Piccin saw lights coming up behind him that were "moving pretty good." Transcript at 176. When Piccin looked beside him on his left hand

side, he saw a truck right beside him. Piccin testified that the truck, which was the same one that he had seen earlier, "whipped around me and come in real close to my front bumper and my van." Transcript at 177. The truck then returned to the right lane, slowed down and then speeded up.

Further on down the road, Piccin saw the pickup truck sideways in both lanes. When he got close to the truck, Piccin went around the same and then turned right onto State Route 313. Piccin then saw a vehicle coming up behind him at a high rate of speed. The vehicle, which Piccin testified was the same pickup truck, then passed him. After the truck stopped in the middle of the road again, Piccin passed the truck again. As he continued driving, Piccin saw "the lights coming back up on me and I heard like a bang." Transcript at 186. The following testimony was adduced when Piccin was asked what happened next:

"I went around the turn at the bottom of 313 and my van I carry working supplies, tools and such and compressor, everything was kind of rattling around in there and sliding and I get around the turn and I start down the straight stretch at 313 and this vehicle at this time I could not see what vehicle it was at this time because all I could see was lights and it was getting pretty close to me. So I would swerve to one side and he would swerve and the only thing I could think to myself is he's trying to get beside me and if he's shooting at me he wants to get up towards the window so I was trying to stay ahead of him and away from him.

"Q. Let's talk about that for a second. How were you trying to stay away from him? What were you doing to stay away?

 "A. I was going at a pretty high rate of speed and swerving.

 "Q. What do you mean you were swerving?

"A. He was trying to past [sic] me and trying to go around me and I would just go like that, like off to one side of the lane and then back and forth.

"Q. This is after this first bang that you heard?

 "A. Yes, sir and he was right on my tail.
"Q. What happened next?

"A. Right before-there's a sign there coming in close to it was right before the sign that says welcome to Buffalo or in that vicinity. I really can't remember that close but I remember I was real close to Buffalo and I heard another bang, a loud pop and a bunch of splatter and I knew they hit me. I didn't feel anything but I knew the van was hit." Transcript at 187-188. Piccin then proceeded to a nearby gas station where he called the police.

Larry and Suzie Horton, who live approximately a quarter mile from where the shootings occurred on State Route 313, testified at trial that, on November 20, 2003, they heard gun shots while at home during the early morning hours.

At trial, Trooper Steven Stolarik of the Ohio State Highway Patrol testified that, after hearing of the above incident, he began patrolling State Route 313 to look for evidence. On November 22, 2004, the trooper recovered a 12 gauge shotgun shell from the north side of State Route 313. Testimony also was adduced at trial that, on November 20, 2003, Ohio State Highway Patrol Trooper Mark Stelzer recovered a shotgun shell powder wad from State Route 313. After a warrant was obtained, appellant's Jeep pickup truck was searched. A Remington 12 gauge shotgun, a Remington 22 caliber long rifle and ammunition were recovered from inside the truck. A firearms examiner with the Bureau of Criminal Investigation testified that the casing found along State Route 313 was fired from appellant's 12 gauge shotgun.

At trial, Eldon Church, who was a passenger in appellant's truck on November 20, 2003, testified after both parties stipulated that the trial court would call Church as a witness pursuant to Evid.R. 614 and then permit both parties to cross-examine him. Church, who was seventeen years old on the day of the incident, testified that he and appellant were driving down the road on November 20, 2003, at approximately 5:30 a.m. on their way to get a load of wood. According to Church, a van came by appellant's truck and "blew" them off the road. Transcript at 254. At the time, appellant was driving while Church, who was in the passenger seat, had a gun beside his leg. Church testified that he unzipped the case the gun was in and pulled the unloaded gun out of the case and that, while he was doing so, appellant did not say anything. At trial, Church testified that he thought that Dan Jennings, who both he and appellant had had problems with before, was in the van. Church further testified that both the gun and the shells used to load it belonged to appellant.

3

When asked, Church testified that he next loaded the gun and then fired two shots towards appellant's front tire as they were following Piccin's van at a high rate of speed. One of the van's windows was shot out. Church testified that it was his idea to get the gun and start shooting. Church admitted that he had given a prior inconsistent statement to the police and to opposing counsel in which he blamed appellant for telling him to shoot the gun at the van. The following testimony was adduced when Church was asked what he said in his statement to the police:

"A. I don't recall what I said.

"Q. You don't recall what you said in your statement?

"A. No, I don't.

"Q. Would it help if I would read that to you?

 "A. Yes, it would.

"THE COURT: I'll permit the counsel as I have a type written statement I want his actual statement read to him please.

"MR. PADDEN: Your Honor, you want the copy or you want me to ---

 "THE COURT: You may. I just have the type written so I want the actual statement.

"MR. PADDEN: It's the statement was taken on a tape and this is a transcript.

"BY THE COURT: Q. Mr. Church, you're under oath and it's very important that this jury determine the truth and in your statement I'm going to permit the attorneys to cross-examine you regarding the statement. My inquiry only is to determine for the jury so that the counsel each can ask you questions that you were asked the question: Okay, did Rusty specifically tell you to shoot the van? Do you remember your answer?

"A. Yeah. I said I don't recall if he did.

"Q. Well, that isn't what you said. You said: He said shoot and try to scare the van or try to scare them to get away. And after that he likes

4

well try and shoot and take the window out. I didn't-I mean, I just shot twice right there towards Rusty's [appellant's] front tire. I could see the sparks. Is that what you told the patrol?

"A. Yes, I did.

 "Q. And then later you were asked: And then he tells you he's going to beat you if you don't shoot it? And you said: Yes, he did. Is that what you testified to?

"A. Yes, I did.

 "Q. And then after you had been processed through the juvenile court you later gave a statement to Mr. Rose's lawyer that's different than that, is that true?

"A. Yes, sir.

"Q. Why did you do that?

"A. Cause he come down and asked me to give them a statement of what happened.

"Q. But I mean, you've given two statements and they're different.

"A. The reason why I did it?

 "Q. No, I just asked you a question. You've given two statements that are different, is that true?

"A. Yeah." Transcript at 260-262.

During cross-examination by the State, Church testified that appellant told him to shoot the gun and that after Church said "no", appellant again told him to shoot. Church, after initially denying that appellant threatened him, admitted that he had told the police that appellant threatened him in order to get Church to fire the gun. Church further admitted that, if appellant had stopped his truck after the first shot, Piccin's van never would have been hit and that appellant helped Church by "keeping driving towards [the] van." Transcript at 270. When questioned, Church admitted that nothing prevented appellant from turning into a side road or doing a U-turn in the road to avoid the van.

5

Upon cross-examination by defense counsel, Church testified that he told the police that it was appellant's idea to shoot the gun since it was close to Christmas and he (Church) wanted to spend Christmas with his family. Church testified that appellant did not tell him to shoot the gun or encourage him to do so and did not know that Church had the gun out until after Church fired the second time. The following is an excerpt from Church's testimony:

"Q. When you fired the first shot what did Rusty do?

"A. He didn't do anything.

"Q. Did he say anything?

"A. No.

"Q. Did he know you shot the gun?

"A. Not that I know of. He didn't say anything.

"Q. Did he act like he knew you fired the gun?

"A. No.

"Q. He just kept driving?

"A. Yep.

"Q. And then you fired the gun a second time?

"A. Yep.

"Q. Down near Buffalo?

"A. Yep.

"Q. Did he know you fired a gun then?

"A. Yeah, cause he told me, he said, put the damn gun away.

"Q. So after you fired the gun the second time he said put the gun away?

"A. Yes.

"Q. What did you do then?

"A. Put the gun away ..."

"Q. So after the second time you fired the gun Rusty told you to put the gun away?

"A. Yes, sir....

"Q. Now, don't you think if you fired that shotgun the first time that Rusty would have heard it?

"A. I would think so but I don't know why he wouldn't but-

"Q. You're holding the gun out the window?

"A. Yeah.

"Q. You're driving 60 miles an hour?

"A. Yeah.

"Q. The truck is making a lot of noise?

"A. (Witness nodded in the affirmative.)" Transcript at 280-281.

When questioned, Church testified that the statement that he had given to police was not true and that he was testifying truthfully at trial.

After cross-examination by both parties, the trial court read Church's statement to the police to the jury. Church, in his statement, indicated that appellant repeatedly told him to shoot toward Piccin's van and threatened to beat him when he initially refused to do so. Church admitted that he had given the statement that was read and that the trial court accurately read the same.

Ohio State Highway Patrol Sergeant Ryan Chapman testified at trial that he supervised the investigation of the alleged shooting. Sergeant Chapman testified that, on November 21, 2003, he talked with appellant outside of the county jail and that he read appellant his *Miranda* rights. According to the sergeant, appellant signed a written waiver of his rights and agreed to talk to him. Appellant, in the written statement, stated as follows when asked whether he had told Eldon Church to shoot at the van: "he [Church] started loading it and

7

I told him to just shoot it out the window and maybe he'll [Piccin] stop." The statement was admitted at trial as State's Exhibit N.

Appellant testified at trial in his own defense. Appellant testified that he did not tell Church to fire the gun and denied telling the officers that he had told Church to do so. Appellant further testified that he did not assist Church in firing the gun in any way and that, once he realized the gun had been fired, he told Church to put the gun away. On cross-examination, appellant testified that he did not see Church load the gun and did not hear the gun being fired the first time, although he admitted that the gun was "pretty loud" when being shot. Transcript at 377. According to appellant, "[i]f I had knew he shot the gun I would not have followed the van no further." Transcript at 377.

At conclusion of the trial and the end of deliberations, the jury, on October 27, 2004, found appellant guilty of felonious assault with a firearm specification. As memorialized in a Judgment Entry filed on November 9, 2004, appellant was sentenced to an aggregate term of six years in prison, was ordered to pay restitution in the amount of $865.31 and was ordered to pay court costs.

Exhibit L to Return of Writ; *State v. Rose*, 2006 WL 234860 (Ohio App. 5 Dist. January 30, 2006).

Represented by new counsel, petitioner filed a timely appeal. He raised the following assignments of error:

I. THE TRIAL COURT ERRED WHEN IT PERMITTED A WITNESS TO TESTIFY ABOUT A PRIOR INCONSISTENT STATEMENT, WITHOUT LIMITING THE ADMISSIBILITY OF THAT TESTIMONY, IN CONTRAVENTION OF EVID. R. 613, 801, 802, 803, AND 804. THAT ERROR DEPRIVED MR. ROSE OF HIS RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; SECTION 16, ARTICLE I, OHIO CONSTITUTION.

II. THE TRIAL COURT ERRED WHEN IT QUESTIONED A WITNESS IN AN IMPROPER MANNER, CONVEYING THE IMPRESSION THAT THE COURT DID NOT BELIEVE THE WITNESS'S [SIC] TESTIMONY. THE TRIAL COURT'S CONDUCT DEPRIVED MR. ROSE OF HIS RIGHT TO A FAIR TRIAL. FIFTH AND FOURTEENTH AMENDMENTS, UNITES

STATES CONSTITUTION; SECTION 16, ARTICLE I, OHIO CONSTITUTION.

III. MR. ROSE WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, BASED ON TRIAL COUNSEL'S DEFICIENT AND PREJUDICIAL PERFORMANCE, IN CONTRAVENTION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

IV. THE TRIAL COURT ERRED WHEN IT SENTENCED MR. ROSE TO SERVE A PRISON TERM THAT EXCEEDED THE MINIMUM TERM OF INCARCERATION. THE SENTENCE IMPOSED WAS BASED ON FACTS THAT WERE NOT FOUND BY A JURY OR ADMITTED BY MR. ROSE, IN CONTRAVENTION OF HIS RIGHTS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

V. THE TRIAL COURT ERRED WHEN IT INCLUDED IN ITS ORDER IMPOSING COSTS THAT MR. ROSE, AN INDIGENT, ALSO PAY THE COSTS INCURRED AS A RESULT OF APPOINTED TRIAL COUNSEL'S REPRESENTATION. THAT ERROR DEPRIVED MR. ROSE OF HIS RIGHTS TO DUE PROCESS AND EQUAL PROTECTION. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; SECTIONS 10 AND 16, ARTICLE I, OHIO CONSTITUTION.

*Id*. On January 30, 1007, the appellate court sustained petitioner's fifth assignment of error, and remanded the case to the trial court for a hearing on petitioner's "ability to pay or reasonable expectation of funds to pay the $3,313.00 in court-appointed counsel fees," but otherwise affirmed the trial court's judgment. *Id*. Still represented by counsel, petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following propositions of law:

1. When a trial court erroneously permits a witness' disavowed, prior inconsistent statement to be admitted into evidence as substantive evidence of guilt, and when the State's other evidence of guilt is not overwhelming, the accused is deprived of a fair trial and due process

9

of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

2. During a jury trial, when the trial court extensively questions a witness, conveying the impression that the court finds the witness' testimony incredible, the trial court deprives the accused of a fair trial. Fifth and Fourteenth Amendments, United States Constitution; Section 16, Article I, Ohio Constitution.

3. During a criminal trial, when the State's evidence of guilt is not overwhelming, and trial counsel makes numerous serious, prejudicial errors, the accused is deprived of the right to the effective assistance of counsel. Sixth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution.

Exhibit M to Return of Writ. On June 7, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibit O to Return of Writ.

On August 3, 2006, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. The trial court erred when it permitted a witness to testify about a prior inconsistent statement.

2. The trial court erred when it questioned a witness in an improper manner.

3. Petitioner was deprived of his rights to the effective assistance of trial counsel.

4. The trial court erred when it sentenced petitioner to serve a prison term that exceeded the minimum term.

10

It is the position of the respondent that claims one, two, and four are procedurally defaulted, and that claim three is without merit.

## II. PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state

11

procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In claim one, petitioner asserts that he was denied a fair trial because Eldon Church was improperly permitted to testify regarding his prior inconsistent statement to police, and the prosecutor referred to Church's statement in closing argument without any limiting instruction being issued by the trial court that Church's prior statement could be considered only to assess Church's credibility, and not as substantive evidence of guilt. In claim two, petitioner asserts that he was denied a fair trial because the trial court "engaged in extensive examination" of Church. In claim four, petitioner asserts that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004).

All of these claims are readily apparent from the face of the record, and were properly raised on direct appeal; however, the state appellate court explicitly reviewed claims one and two only for plain error due to trial counsel's failure to object or to request a limiting instruction at trial:

> Appellant, in his first assignment of error, argues that the trial court erred when it permitted Eldon Church to testify about a prior inconsistent statement that Church made to the police. Appellant specifically contends that the trial court erred when it permitted Church's prior inconsistent statement to the police to be admitted as substantive evidence of appellant's guilt. Appellant maintains that the jury's use of Church's prior inconsistent statement "should have been limited to evaluating Mr. Church's credibility only, and the trial court should have so instructed the jury."
>
> As is set forth above, Church, in his statement to police, inculpated appellant. However, during his testimony at trial, Church testified that appellant did not tell him to shoot the gun or encourage him to

do so and did not know that Church had fired the gun until after the second shot was fired.

Because appellant's counsel failed to request a limiting instruction and also failed to object to the court's not giving a limiting instruction, Crim.R. 30(A) precludes the issue from being raised on appeal unless it amounts to plain error pursuant to Crim.R. 52(B). *See State v. Gideons* (1977), 52 Ohio App.2d 70, 368 N.E.2d 67; *State v. Long* (1978), 53 Ohio St.2d 91. 372 N.E.2d 804. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *See Long, supra*. at paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. *Id*. at paragraph two of the syllabus.

Upon our review of the record, we find that there was overwhelming evidence that appellant aided and abetted the actions of Eldon Church. As is set forth in detail above, there was testimony at trial that appellant, who was driving the truck, pursued Tim Piccin, who was trying to evade him, for a distance. There was evidence that there were guns and ammo in the truck. Moreover, appellant, in a signed sworn statement to the police, admitted that he told Church to fire the gun at Piccin's van. Furthermore, while appellant testified at trial that he did not hear the first shot and that he told Church to stop shooting after the second, he himself admitted that the gun was loud when fired. In addition, Larry and Suzie Horton, who lived approximately a quarter mile from the site of the shootings on State Route 313, testified that they heard gun shots while at their home. From the above testimony, the jury could reasonably have concluded beyond a reasonable doubt that appellant continued pursuing Piccin even after hearing the first shot.

Based on the foregoing, we find that, even assuming that Church's prior inconsistent statement was improperly admitted as substantive evidence of appellant's guilt and that a limiting instruction should have been given, there was overwhelming evidence of appellant's guilt. The admission of the same did, therefore, not constitute plain error.

Appellant's first assignment of error is, therefore, overruled.

II

Appellant, in his second assignment of error, argues that the trial court erred when it questioned Eldon Church in an improper manner, "conveying the impression that the court did not believe the witness's testimony."

In the case *sub judice*, the parties stipulated that the trial court would call Eldon Church as a witness pursuant to Evid. R. 614 and that both parties then would be permitted to cross-examine him.

Evid.R. 614 states as follows:

"(A) Calling by court

"The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

"(B) Interrogation by court

"The court may interrogate witnesses, in an impartial manner, whether called by itself or by a party.

"(C) Objections

"Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present."

Since appellant did not object to the court's questioning of Eldon Church, he has waived all but plain error. *See City of Hamilton v. Clemans* (1997), 121 Ohio App.3d 337, 700 N.E .2d 33. An alleged error "does not constitute a plain error ... unless, but for the error, the outcome of the trial clearly would have been otherwise." See *Long,* supra, at paragraph two of the syllabus.

We do not find the trial court's questions constitute plain error since, but for the alleged errors, the outcome at trial would not have been different. As is set forth in detail above, in the case *sub judice*, there was overwhelming evidence of appellant's guilt.

Finally, a "court reviewing a trial court's interrogation of witnesses

14

> and comments will reverse only if the trial court abused its
> discretion." *State v. Wasmer* (Mar. 16, 1994), Jackson App. No. 714,
> 1994 WL 90400 at 3. See also, *State v.. Davis (1992),* 79 Ohio
> App.3d 450, 455, 607 N.E.2d 543. A review of the transcript
> demonstrates no abuse of discretion or lack of impartiality by the trial
> court.
>
> Based on the foregoing, appellant's second assignment of error is
> overruled.

Exhibit L to Return of Writ; *State v. Rose*, *supra*. Petitioner therefore has waived the right to present

claims one and two for federal habeas corpus review.

> Controlling precedent in our circuit indicates that plain error review
> does not constitute a waiver of state procedural default rules. *See
> Paprocki v. Foltz,* 869 F.2d 281, 284-85 (6th Cir.1989) (stating that
> the state court's review of a claim for "manifest injustice" did not
> constitute a waiver by the state of its contemporaneous objection
> rule).

*Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Further, the United States Court of Appeals

for the Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate

and independent state ground on which to preclude federal habeas review. *See Gulertekin v.

Tinnelman-Cooper*, 340 F.3d 415, 424 (6th Cir. 2003); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.

2001).

However, petitioner may still secure review of his first and second claims on the merits if

he demonstrates cause for his failure to follow the state contemporaneous objections rule, as well

as actual prejudice from the constitutional violations that he alleges.

As cause for his procedural default, the Court presumes that petitioner asserts the ineffective

assistance of counsel, which is raised in ground three of the habeas corpus petition. The ineffective

assistance of counsel may constitute cause for a procedural default, so long as such claim has been

presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 451-52 (2000). For the reasons discussed, *see infra,* however, the Court concludes that petitioner has failed to establish either cause or actual prejudice for his procedural default of claims one and two.

As to claim four, in which petitioner asserts that his sentence violates *Blakely,* this claim was properly raised on direct appeal; however, petitioner failed to present this claim on appeal to the Ohio Supreme Court. Moreover, he is precluded by Ohio's doctrine of *res judicata* from doing so now. *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).

This Court must therefore decide whether the procedural rules barring consideration of claim four constitute adequate and independent bases upon which to foreclose review of petitioner's federal constitutional claim. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. *See Maupin v. Smith*, 785 F.2d at 138. Under this analysis, the procedural rules barring consideration of claim four constitute adequate and independent state grounds for denying relief. The state courts must be given a full and fair opportunity to remedy alleged constitutional defects. The requirement that all available claims be asserted at the first opportunity to do so serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Additionally, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra.*

Petitioner has waived his right to present claims one, two and four for federal habeas corpus

review. Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In claim three, and as cause for his procedural default of claims one and two, petitioner asserts the ineffective assistance of trial counsel. The state appellate court rejected this claim as follows:

> Appellant, in his third assignment of error, contends that he received ineffective assistance of trial counsel. We disagree.
>
> The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, *i.e.*, errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. *See State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
>
> In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id*.
>
> In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

17

at 142.

Appellant contends that his trial counsel was ineffective in failing to object to the admission of Eldon Church's prior inconsistent statement as substantive evidence of appellant's guilt; failing to request a jury instruction that such statement could be considered for impeachment purposes only; failing to make a motion for a judgment of acquittal and in failing to object to the trial court's questioning of Eldon Church. Appellant further argues counsel was ineffective in failing to object to the admission into evidence of a baseball cap that was found along the road during the police investigation even after the trial court questioned the relevance of such item. [FN1]

FN1. The trial court did not initially admit the baseball cap as an exhibit, but questioned the relevance of the same. The State, in response, stated as follows: "The baseball hat was simply found by them [the police] along the road. Whether it is attributable to them to this case or not it does go to show the thoroughness of their investigation. That's really the only evidentiary value it would have." Transcript at 342-343. After there was no objection by defense counsel, the trial court admitted the same.

Appellant also complains that his counsel was ineffective in failing to object to the lack of a proper chain of custody for Exhibit E, which was a pellet that was obtained from Tim Piccin, and in failing to object to comments the prosecutor made during closing argument. Appellant, with respect to the latter, specifically argues that trial counsel should have objected to comments the prosecutor made about the consistency between Piccin's pretrial statement and his trial testimony when the pretrial statement was never admitted into evidence during the trial and to comments the prosecution made about Eldon Church's juvenile court proceedings when there was no testimony regarding those proceedings. According to appellant, trial counsel also was less than effective in failing to object to the prosecutor's comments to the jury that Eldon Church's prior inconsistent statement to the police established the elements of the offense of felonious assault.

With respect to the above alleged errors, we find that they were not prejudicial since there was substantial evidence of appellant's guilt. As is set forth above, there is evidence that appellant pursued Tim Piccin for a distance and made no attempt to avoid him. Although appellant testified he did not hear the first shot, there was also

testimony that the gun shots were heard as much as a quarter mile away. Finally, appellant, in his sworn statements, admitted that he told Church to fire the gun towards Piccin's van.

Appellant also argues that his counsel was ineffective in failing to request a jury instruction on the "mere presence" defense. Appellant notes that his primary defense was that he did not know that Eldon Church was going to shoot the gun, that he did not instruct Church to do so, and that he was merely driving the truck when Church acted alone. However, we find that trial counsel was not ineffective in failing to request such an instruction since there was substantial evidence adduced at trial that appellant was not merely present when the shots were fired. Testimony was adduced at trial that appellant, the driver of the truck, pursued the victim for a distance. Appellant, in a written signed statement to police, admitted telling Church to fire the gun. In short, we concur with appellee that there was evidence that appellant aided and abetted Eldon Church and that "there was no substantial probability that the mere presence defense" would have aided appellant.

Based on the foregoing, assuming, *arguendo*, that trial counsel fell below an objective standard of reasonable representation, we find that appellant cannot satisfy the second prong of the *Strickland* test given the ample evidence supporting the jury's verdict.

Appellant's third assignment of error is, therefore, overruled.

Exhibit L to Return of Writ; *State v. Rose*, *supra*.[1]

The decision of the state appellate court is presumed to be correct:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

---

[1] Petitioner does not assert in these federal habeas corpus proceedings that he was denied the effective assistance of counsel due to his attorney's failure to object to improper comments by the prosecutor during closing argument, or counsel's failure to request a jury instruction on mere presence. The Court therefore will not address these issues here.

19

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005).  Petitioner has failed to establish that the state appellate court's decision denying this claim is unreasonable so as to justify federal habeas corpus relief.  *Williams v. Taylor, supra.*

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel.  *McMann v. Richardson*, 397 U.S. 759, n.14 (1970).  The standard for reviewing a claim of ineffective assistance is twofold:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the

> defendant by the Sixth Amendment.  Second, the defendant must
> show that the deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th

Cir. 1987).  "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy."  *Strickland*, at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for

counsel's errors, the result of the proceedings would have been different.  *Strickland,* at 694.  "A

reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.

Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective

assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider

the other.  *Id.*, at 697.

Upon review of the record, this Court agrees with the appellate court's conclusion that

petitioner cannot establish prejudice under *Strickland* by reason of his attorney's failure to request

a limiting instruction, his failure to object to questioning of Church by the trial judge or his failure

to object to admission of a baseball hat found by the road or the lead pellet that Piccin had removed

from his van.

> Attorney errors come in an infinite variety and are as likely to be
> utterly harmless in a particular case as they are to be prejudicial....
> Even if a defendant shows that particular errors of counsel were
> unreasonable, therefore, the defendant must show that they actually
> had an adverse effect on the defense.  It is not enough for the

> defendant to show that the errors had some conceivable effect on the
> outcome of the proceeding.

*Strickland, supra,* 466 U.S. at 693.

> [A] verdict or conclusion only weakly supported by the record is
> more likely to have been affected by errors than one with
> overwhelming record support.... [A] court making the prejudice
> inquiry must ask if the defendant has met the burden of showing that
> the decision reached would reasonably likely have been different
> absent the errors.

*Id.*, at 696.  Petitioner has not met this standard here.

As noted by the state appellate court, evidence of guilt was strong.  Additionally, although

he denied it at trial, petitioner admitted to police that he told Church to shoot at Piccin's van.

Moreover, the trial judge did not elicit any testimony from Church that was not also brought out by

the parties.  In any event, the trial court instructed the jury as follows:

> Now, if during the course of this trial I have said anything that you
> consider my indication of my view of the facts you are instructed to
> disregard it.

*Transcript*, at 413.  This Court is unable to discern in what manner petitioner was prejudiced by the

admission of a baseball hat found by the road that was not linked to any determinative issue in this

case.  Admission of the lead pellet found in Piccin's van likewise did not prejudice petitioner

because it was undisputed that Church shot at Piccin's van.  The issue for the jury to decide was

petitioner's involvement in this assault.

Petitioner has failed to establish that he was denied the effective assistance of counsel.  He

likewise has failed to establish cause for his procedural default of claims one and two.

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

June 11, 2007                                                 *s/Norah McCann King*
                                                              Norah McCann King
                                                              United States Magistrate Judge